UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SUNIL TORAMALL, DANTE DECAPUA,          :
SAMUEL DECAPUA, ANTHONY MORROW,
RYAN COSTA, JOSE MOTA, ANNAMARIE        :
BEAULIEU AS ADMINISTRATOR OF THE
ESTATE OF BRIAN BEAULIEU, DECEASED      :
and PHILLIP FRIESON,
                                        :
           Plaintiffs,                          REPORT & RECOMMENDATION
                                        :
        -v-                                     18 Civ. 1062 (PGG) (GWG)
                                        :
MANHATTAN CONSTRUCTION GROUP LLC,
LV CONSTRUCTION SERVICES LLC,           :
and DEWEY FATTORUSSO
                                        :
           Defendants.
                                        :
-------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Sunil Toramall, Dante Decapua, Samuel Decapua, Anthony Morrow, Ryan

Costa, Jose Mota, Phillip Frieson, and Annamarie Beaulieu, as administrator of the Estate of

Brian Beaulieu, have brought this action against Manhattan Construction Group LLC ("MCG"),

LV Construction Services LLC ("LVCS"), and Dewey Fattorusso alleging defendants violated

the New York Labor Law §§ 190 et seq. ("NYLL"), N.Y. Comp. Codes R. & Regs. tit. 12,

§ 142-2.2 ("NYCCRR"),[1] and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").

Plaintiffs now seeks a default judgment against MCG and LVCS (the "corporate defendants").[2]

---

[1]  Though the complaint references NYCCRR tit. 12, § 137-1.3, Compl. ¶ 1, that
regulation was repealed in 2010.  The operative overtime regulation during the relevant period is
NYCCRR tit. 12, § 142-2.2.

[2]  See Declaration in Support of an Order for Default Judgment, filed June 6, 2019
(Docket # 43) ("Motion for Default Judgment"); Proposed Findings of Fact And Conclusions of
Law, filed Nov. 13, 2019 (Docket # 56) ("Proposed Findings"); Declaration of Sunil Toramall in

Judgment should be entered against corporate defendants in the amounts described below.

I. PROCEDURAL BACKGROUND

Plaintiffs filed the complaint on February 6, 2018. See Complaint, filed Feb. 6, 2018 (Docket # 1) ("Compl."). All of the defendants were served (Docket ## 9-11) and on May 9, 2018, an attorney, Gerald V. Dandeneau, filed an answer to the complaint on behalf of all three defendants. See Docket ## 16-18. On January 9, 2019, Dandeneau filed a motion to withdraw as attorney for all three defendants. See Notice of Motion to Withdraw as Counsel Without Substitution, filed Jan. 9, 2019 (Docket # 28). A hearing was held on the motion on January 24, 2019, and the motion to withdraw was granted that same day. See Order, dated Jan. 24, 2019 (Docket # 34). The corporate defendants were given until March 11, 2019, to obtain counsel. Id. On March 8, 2019, defendant Fattorusso requested a 30-day extension to the deadline for MCG to retain an attorney because he was "financially struggling to find a lawyer." See Letter from Dewey Fattorusso, dated March 11, 2019 (Docket # 36). That request was granted and the corporate defendants were given until April 11, 2019, to obtain counsel. See Docket # 38. No attorney ever entered an appearance on behalf of the corporate defendants, and plaintiffs made a

---

Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-1) ("Toramall Decl."); Declaration of Dante Decapua in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-2) ("Dante Decl."); Declaration of Samuel Decapua in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-3) ("Samuel Decl."); Declaration of Anthony Morrow in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-4) ("Morrow Decl."); Declaration of Ryan Costa in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-5) ("Costa Decl."); Declaration of Annamarie Beaulieu in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-6) ("Beaulieu Decl."); Declaration of Phillip Frieson in Support of the Inquest on Damages, dated Nov. 7, 2019 (Docket # 56-7) ("Frieson Decl."); Declaration of Jose Mota in Support of the Inquest on Damages, dated Nov. 8, 2019 (Docket # 56-8) ("Mota Decl.").

motion for default judgment against the corporate defendants on June 6, 2019.  See Motion for Default Judgment.

On August 5, 2019, the corporate defendants were ordered to show cause why a default judgment should not be entered against them for failing to obtain counsel prior to the Court's deadline.  See Order to Show Cause for Default, filed Aug. 5, 2019 (Docket # 47); see also, e.g., Ideavillage Prod. Corp. v. Bling Boutique Store, 2018 WL 3559085, at *2 (S.D.N.Y. July 24, 2018) ("Because corporations cannot proceed pro se, default is warranted when a corporation is not represented by an attorney.") (citations omitted).  A hearing was held on the order to show cause on August 15, 2019, and on August 19, 2019, an order of default was issued against the corporate defendants.  See Order of Default, filed Aug. 19, 2019 (Docket # 51).

This Court then directed plaintiffs to file Proposed Findings of Fact and Law, see Docket # 52, and plaintiffs submitted proposed findings and accompanying affidavits on November 13, 2019, see Proposed Findings.  The proposed findings were served on Fattorusso as a representative of the corporate defendants.  See Certificate of Service, filed Nov. 13, 2019 (Docket # 57).

II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.  Facts Relating to Liability

In light of the corporate defendants' default, the Court accepts as true the well-pleaded allegations in the complaint, with the exception of those allegations relating to damages.  See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citations, alterations, and quotation marks omitted).

3

"The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  This inquiry requires the District Court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting the damages to be determined under this rule."  Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" the district court to conduct a hearing on the damages amount.  Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted).  In this case, the Court finds that a hearing is unnecessary inasmuch as plaintiffs' submissions have not been contested and they provide all the information needed to determine plaintiffs' damages.  The findings of fact herein are based on the allegations in the complaint regarding liability, and the admissible evidence regarding damages in plaintiffs' submissions.

MCG and LVCS were both construction companies that operated in New York State.  See Compl. ¶¶ 57-58.  Fattorusso holds an ownership interest in, and is a shareholder of, MCG and LVCS.  Id. ¶¶ 39-40.  Plaintiffs worked as construction workers for defendants in the New York City area.  Id. ¶ 2.  Their primary duties involved demolishing and reconstructing the interior premises of buildings in and around Manhattan.  Id.  Each of the plaintiffs was an employee entitled to protection under the FLSA, NYLL, and NYCCRR.  Id. ¶¶ 12, 15, 18, 21, 24, 27, 30, 33.  During their employment, plaintiffs were paid every week and reported the number of hours they worked to their supervisors either telephonically or by text message.  Id. ¶ 3.  Plaintiffs' work week ran from Thursday to Wednesday, and they were paid for each week

the following Thursday.  Id.  Plaintiffs frequently worked more than eight hours each day, and it

was not uncommon for a plaintiff to work over 60 hours in a week.  Id.  Specifically, plaintiffs

worked six days a week, from 6:30 a.m. to 5:30 p.m. each day.  Id. ¶ 62.

Plaintiffs were not paid at an overtime rate for the hours worked in excess of 40 hours

each week.  Id. ¶ 4.  For example, during the week of September 10, 2014, plaintiffs Toramall,

Dante Decapua, and Morrow worked 57 hours, 53 hours, and 57.5 hours respectively, but were

not paid overtime.  Id. ¶¶ 63, 64, 66.  During the week of June 19, 2011, plaintiff Samuel

Decapua worked 70 hours but was not paid overtime.  Id. ¶ 65.  During the week of June 4, 2014,

plaintiff Costa worked 71 hours but was not paid overtime.  Id. ¶ 67.  During the week of March

16, 2014, plaintiff Mota worked 45 hours but was not paid overtime.  Id. ¶ 68.  During the week

of March 19, 2014, plaintiff Beaulieu worked 52 hours but was not paid overtime.  Id. ¶ 69.

During the week of July 23, 2014, plaintiff Frieson worked 46 hours but was not paid overtime.

Id. ¶ 70.  Plaintiffs were each paid a flat hourly wage no matter how many hours they worked.

Id. ¶¶ 4, 63-70.[3]  Also, plaintiffs were not given "accurate and/or complete wage statements" on

each payday.  Id. ¶ 5.

Plaintiffs allege that all the defendants, including MCG and LVCS, were their employers

and thus liable under the FLSA and NYLL.  Id. ¶¶ 44, 93, 100.

B.  Back Pay — Overtime Owed

With exceptions not alleged to be applicable here, both the FLSA and NYLL require that

an employee be paid an overtime rate not less than one and one-half times his or her regular rate

---

[3]  Some of the hourly wage amounts alleged in the complaint differ from those stated in
plaintiffs' sworn declarations.  Because these amounts are relevant to damages, we use the
amounts contained in the declarations.

for hours worked in excess of 40 hours per work week. <u>See</u> 29 U.S.C. § 207(a)(1); N.Y. Comp.

Codes R. & Regs. tit. 12 § 142-2.2; <u>Changxing Li v. Kai Xiang Dong</u>, 2017 WL 892611, at *4

(S.D.N.Y. Mar. 7, 2017); <u>Rios v. Neighborhood Const. Corp.</u>, 2009 WL 3335354, at *1

(S.D.N.Y. Oct. 14, 2009); <u>Bennett v. Progressive Corp.</u>, 225 F. Supp. 2d 190, 215 (N.D.N.Y.

2002). Plaintiffs have proffered evidence in the form of sworn affidavits of the approximate

hours they worked, the average wage they received per hour, and the number of weeks they

worked. <u>See</u> Toramall Decl. ¶¶ 3-5; Dante Decl. ¶¶ 3-5; Samuel Decl. ¶¶ 3-5; Morrow Decl.

¶¶ 3-5; Costa Decl. ¶¶ 3-5; Beaulieu Decl. ¶¶ 3-5; Frieson Decl. ¶¶ 3-5; Mota Decl. ¶¶ 3-5.

Toramall worked for defendants from June 2013 to September 2015, Toramall Decl. ¶ 2; Dante

Decapua worked for defendants from September 2009 to September 2015, Dante Decl. ¶ 2;

Samuel Decapua worked for defendants from March 2011 to July 2015, Samuel Decl. ¶ 2;

Morrow worked for defendants from April 2014 to June 2015, Morrow Decl. ¶ 2; Costa worked

for defendants from March 2012 to April 2015, Costa Decl. ¶ 2; Beaulieu worked for defendants

from February 2014 to July 2015, Beaulieu Decl. ¶ 2; Frieson worked for defendants from March

2014 to March 2015, Frieson Decl. ¶ 2; and Mota worked for defendants from July 2012 to July

2015, Mota Decl. ¶ 2.[4]

Despite regularly working over 40 hours per week, none of the plaintiffs were paid

overtime. <u>See</u> Compl. ¶¶ 3-4. Thus, plaintiffs have established defendants' liability for unpaid

overtime wages under the FLSA and NYLL. Each plaintiff submits an affidavit that states "[a]

---

[4] The sworn affidavits of Dante Decapua and Samuel Decapua state that they were
employed by defendants for 312 weeks (six years) and 225 weeks (4 years, 4 months),
respectively. <u>See</u> Dante Decl. ¶ 2; Samuel Decl. ¶ 2. However, those same affidavits request
unpaid overtime only for 181.14 and 172.29 weeks, respectively. <u>See</u> Dante Decl. ¶ 4; Samuel
Decl. ¶ 4. We take this to mean that there were gaps in their periods of active employment.

fair and accurate average of the overtime hours" is 15 hours per week.  See Toramall Decl. ¶ 3;
Dante Decl. ¶ 3; Samuel Decl. ¶ 3; Morrow Decl. ¶ 3; Costa Decl. ¶ 3; Beaulieu Decl. ¶ 3;
Frieson Decl. ¶ 3; Mota Decl. ¶ 3.  Courts routinely use an average of overtime hours to
determine damages in the absence of employer records.  See Cabrera v. Canela, 2019 WL
1451994, at *9 (E.D.N.Y. Mar. 29, 2019) (awarding damages "[b]ased on plaintiff's testimony"
that "he worked an average of fifteen overtime hours per week."); Guadalupe v. Tri-State Emp't,
Mgmt. & Consulting, Inc., 2013 WL 4547242, at *11 (E.D.N.Y. Aug. 28, 2013) (awarding
damages where "the records of time worked during the first half of his career with defendants
were missing, so plaintiffs estimated the amount of hours [plaintiff] worked based on the average
number of hours reflected in the records for the second half of his employment.").

Plaintiffs have provided a table that calculates the unpaid overtime each plaintiff is owed.
Id. at 9-10.  We have reviewed the table, and while there are some minor discrepancies due to
rounding, we find that it comports with the information contained in each plaintiff's sworn
declaration, with the exception of Beaulieu's declaration, which we discuss next.[5]  See Toramall
Decl. ¶ 5; Dante Decl. ¶ 5; Samuel Decl. ¶ 5; Morrow Decl. ¶ 5; Costa Decl. ¶ 5; Frieson Decl.
¶ 5; Mota Decl. ¶ 5.  Accordingly, we accept the accuracy of the tables for purposes of this
motion, especially "in the absence of any rebuttal evidence proffered by Defendants."  Rios,
2009 WL 3335354, at *1 (citation omitted).  Plaintiffs are owed the following amounts in unpaid

---

[5]  Plaintiffs' damages chart also appears to invert the damages sought for each plaintiff
under NYLL § 195(3) (wage statement claims) and NYLL § 195(1) (wage notice claims).  See
Proposed Findings at 9-10.  In other words, while the individual damages breakdown for each
plaintiff seeks $5,000 for each § 195(3) claim and $2,500 for each § 195(1) claim, see, e.g.
Proposed Findings ¶ 12, plaintiffs' damages chart seeks $2,500 for each § 195(3) claim and
$5,000 for each § 195(1) claim.  We use the § 195 damages contained in the Proposed Findings'
individual breakdown by plaintiff, rather than the apparently erroneous damages contained in
plaintiffs' chart.  See Proposed Findings ¶¶ 12-19.

overtime wages: Toramall: $23,779.29, Dante Decapua: $24,454.28, Samuel Decapua: $30,365.36, Morrow: $6,848.43, Costa: $23,525.36, Frieson: $4,888.39, and Mota: $14,655.18. See Proposed Findings at 9-10.

Beaulieu is deceased and the affidavit supporting his damages has been executed by his wife. Beaulieu Decl. ¶ 1. Annamarie Beaulieu states she "submits this declaration as a person with personal knowledge of the activities of Brian Beaulieu as [she] resided with him as husband and wife and was fully aware of his job and time that he spent on the job for Defendants." Id. Because the declaration is based on Annamarie Beaulieu's personal knowledge, we find it admissible to support Beaulieu's claim for damages. See generally Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). The declaration states that plaintiff Beaulieu worked for defendants from February 2014 to July 2015, Beaulieu Decl. ¶ 2, which is 73.57 weeks, id. ¶ 4. However, when calculating the damages owed to plaintiff Beaulieu, the declaration inexplicably uses an employment duration of 156.43 weeks. Id. ¶ 5 ("[T]he estate is owned [sic] approximately $157.50 ($10.50 x 15) x 156.43 weeks [sic] equals $11,587.50."). Although the calculation contained in the declaration erroneously references a "156.43" weeks figure, it ultimately appears to arrive at a sum based on approximately 73.57 weeks of employment. We calculate Beaulieu's damages based on 73.57 weeks of employment by defendants and arrive at a similar figure: $11,587.50 ($21 x .5 x 15 x 73.57 = $11,580.98).

C. Liquidated Damages

"'Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages' for violations of the FLSA's minimum wage and

8

overtime provisions." Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015)

(quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008))

(additional citation omitted).  While a district court has "discretion to deny liquidated damages

where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective

good faith with objectively reasonable grounds for believing that its acts or omissions did not

violate the FLSA," id. (citations and internal quotation marks omitted), no such showing has

been made here.

> Since 2010, the NYLL has had a similar provision, which provides in relevant part:
> In any action instituted in the courts upon a wage claim by an employee or the
> commissioner in which the employee prevails, the court shall allow such
> employee to recover the full amount of any underpayment, all reasonable
> attorney's fees, prejudgment interest as required under the civil practice law and
> rules, and, unless the employer proves a good faith basis to believe that its
> underpayment of wages was in compliance with the law, an additional amount as
> liquidated damages equal to one hundred percent of the total amount of the wages
> found to be due . . . .

N.Y. Lab. L. § 198(1-a) (emphasis added).  While plaintiffs seek recovery of liquidated damages

under both the FLSA and the NYLL, see Proposed Findings at 9-10, such recovery is not

permitted.  In Rana v. Islam, 887 F.3d 118 (2d Cir. 2018), the Second Circuit held that because

"[d]ouble recovery is generally disfavored," the NYLL and FLSA do not "allow[] duplicative

liquidated damages for the same course of conduct."  Id. at 123.  Here, because defendants are in

default and thus have not made any showing that the underpayment of wages was in good faith

compliance with the law, plaintiffs are entitled to the imposition of one set of liquidated

damages.  Because the NYLL provides a greater amount of recovery for the overtime violations,

we award liquidated damages pursuant to the NYLL only.  See, e.g., Mei Chun Poon v. Apple

NYC Corp., 2019 WL 75674, at *8 (S.D.N.Y. Jan. 2, 2019); see also Manzanares v. Your

Favorite Auto Repair & Diagnostic Ctr., Inc., 2018 WL 6718766, at *10 (E.D.N.Y. Nov. 7,

9

2018) ("When two forms of damages are available for the same violation, courts have generally awarded the higher of the two.") (additional citation omitted) (citing Rana, 887 F.3d at 119).

Plaintiffs are entitled to liquidated damages in the amount of 100% of their unpaid overtime wages under the NYLL.

     D.  <u>Failure to Provide Wage Statements</u>

Since April 9, 2011, the NYLL has required employers to "furnish each employee with a statement with every payment of wages," which includes, <u>inter alia</u>, the rate of payment, the gross wages provided, and the applicable overtime rate.  N.Y. Lab. L. § 195(3).  Defendants failed to provide plaintiffs with such statements.  <u>See</u> Compl. ¶¶ 105-109.

Before February 27, 2015, statutory damages for violating this provision of the NYLL were limited to $100 per work week, not to exceed $2,500.  <u>See</u> 2010 N.Y. Laws ch. 564 § 7; <u>accord</u> <u>Poon</u>, 2019 WL 75674, at *9.  The penalty was mandatory.  <u>See</u> 2010 N.Y. Laws ch. 564 § 7 (employee "shall" recover the statutory damages).  Since February 27, 2015, the statute requires a penalty of $250 for each work day that the violations occurred, not to exceed $5,000. <u>See</u> N.Y. Lab. L. § 198(1-d).  The penalty remains mandatory.  <u>See id.</u>  The statutory maximum is accordingly reached after 20 work days.  Each of the plaintiffs other than Frieson worked more than 20 work days after February 27, 2015, and thus are each entitled to $5,000 in statutory damages under the wage statements provision.  <u>See</u> Toramall Decl. ¶ 2 (concluded employment September 2015); Dante Decl. ¶ 2 (concluded employment September 2015); Samuel Decl. ¶ 2 (concluded employment July 2015); Morrow Decl. ¶ 2 (concluded employment June 2015); Costa Decl. ¶ 2 (concluded employment April 2015); Beaulieu Decl. ¶ 2 (concluded employment July 2015); Mota Decl. ¶ 2 (concluded employment July 2015).  Frieson's affidavit, however, does not make clear that he worked 20 business days after February 27, 2015, inasmuch as he

states his employment concluded in "March 2015," which could refer to Monday, March 1, 2015. Frieson Decl. ¶ 2. It is clear, however, that he worked 25 weeks prior to that date. Accordingly, Frieson is awarded the $2,500 maximum in effect before that time.

    E.  <u>Failure to Provide Notices</u>

    NYLL § 195(1) requires that, at the time of hiring, an employer "provide his or her employees, in writing in English and in the language identified by each employee as [their] primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

<u>Id.</u> § 195(1)(a); <u>accord</u> <u>Franco v. Jubilee First Ave. Corp.</u>, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016). The notice must also state an employee's regular hourly rate and overtime rate of pay. N.Y. Lab. L. § 195(1)(a).

    Prior to February 27, 2015, the statue provided for statutory damages of up to $50 per work week, not to exceed $2,500, for failure to comply with this provision. <u>See id.</u> § 198(1-b) (effective Apr. 9, 2011 to Feb. 26, 2015). After February 27, 2015, statutory damages of $50 accrue per work day, not to exceed $5,000, for failure to comply with this provision. <u>See id.</u> § 198(1-b).

    Here, accepting as true all well-plead allegations regarding liability, plaintiffs have not established liability under NYLL § 195(1). The complaint states in its prayer for relief that plaintiffs seek penalties for "failure to comply with the notice and record keeping requirements

11

of NYLL § 195(1)."  See Compl. at 15.  The complaint also alleges defendants failed to keep

accurate records of wages earned and hours worked by the plaintiffs.  See id. ¶¶ 76, 78, 80, 82,

84, 86, 88, 90.  However, there is no allegation anywhere in the complaint that plaintiffs were not

provided with a notice of their rate of pay at the beginning of their employment.  Such an

allegation is required to state a § 195(1) claim.  Accordingly, plaintiffs have failed to establish

liability against defendants with respect to their § 195(1) claims, and thus should not be awarded

any damages with respect to those claims.

F.  Attorneys' Fees

Plaintiffs' Proposed Findings state that "[b]oth the FLSA and the NYLL are fee-shifting

statutes, allowing Plaintiffs to recover reasonable attorneys' fees and costs" and "request a fee in

the amount of 1/3rd of the total judgement amount as dictated by the retainer agreement."

Proposed Findings at 8.  While plaintiffs' correctly note that the FLSA and NYLL are "fee-

shifting statutes," the statutes provide for fees to be "shifted" from the employer to the plaintiff,

not from the plaintiff to the plaintiff's attorney.  Thus, there is no basis under these statutes for

the Court to "shift" any portion of the judgment to the plaintiffs' attorneys pursuant to a retainer

agreement.  To the extent that the attorneys meant to request an additional award on top of the

judgment in the amount of an additional one-third, that request is impermissible because district

courts calculating fees pursuant to fee-shifting statues must use "the 'lodestar' approach,

whereby an attorney fee award is derived by multiplying the number of hours reasonably

expended on the litigation times a reasonable hourly rate."  P.J. by & through W.J. v. Conn. State

Bd. of Educ., 931 F.3d 156, 169 (2d Cir. 2019) (citation and some internal quotation marks

omitted).  Nothing in the record shows the reasonable hourly rates of the attorneys seeking fees

or the number of hours those attorneys worked.  See N.Y. State Ass'n for Retarded Children, Inc.

v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983) (attorney's fee award should "normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); Silverman & Silverman, LLP v. Pacifica Found.,  2015 WL 7118246, at *6 (E.D.N.Y. Sept. 22, 2015) ("[P]laintiff's only submission bearing on attorney's fees is a three-sentence declaration from plaintiff's counsel, asking the court to award his contingency fee. . . .  This is not a sufficient basis for a determination that the attorney's fees sought are reasonable."), adopted by 2015 WL 7158533 (E.D.N.Y. Nov. 12, 2015).

      G.  Summary of Amounts to Be Awarded

| Plaintiff | Overtime Wages | NYLL Liquidated Damages | NYLL § 195(3) | Total |
|---|---|---|---|---|
| Sunil Toramall | $23,779.29 | $23,779.29 | $5,000 | $52,558.58 |
| Dante Decapua | $24,454.28 | $24,454.28 | $5,000 | $53,908.57 |
| Samuel Decapua | $30,365.36 | $30,365.36 | $5,000 | $65,730.72 |
| Anthony Morrow | $6,848.43 | $6,848.43 | $5,000 | $18,696.86 |
| Ryan Costa | $23,525.36 | $23,525.36 | $5,000 | $52,050.72 |
| Brian Beaulieu | $11,580.98 | $11,580.98 | $5,000 | $28,161.96 |
| Phillip Frieson | $4,888.39 | $4,888.39 | $2,500 | $12,276.78 |
| Jose Mota | $14,655.18 | $14,655.18 | $5,000 | $34,310.36 |

III.  <u>CONCLUSION</u>

Judgment should be awarded in favor of plaintiffs against defendants MCG and LVCS in the following amounts: Sunil Toramall: $52,558.58, Dante Decapua: $53,908.57, Samuel Decapua: $65,730.72, Anthony Morrow: $18,696.86, Ryan Costa: $52,050.72, Brian Beaulieu: $28,161.96, Phillip Frieson: $12,276.78, and Jose Mota: $34,310.36.

The Clerk is requested to mail a copy of this Report and Recommendation to defendant Dewey Fattorusso.

<b><u>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</u></b>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Gardephe.  If a party fails to file timely objections, that party <u>will not be permitted to raise any objections to this Report and Recommendation on appeal</u>.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P.6(a), (b), (d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 28, 2020
       New York, New York

 

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge